UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERT WEISS,                    )   Case No. CV 04-6925-RC
                                 )
            Plaintiff,           )
                                 )
vs.                              )   OPINION AND ORDER
                                 )
JO ANNE B. BARNHART,             )
Commissioner of the Social       )
Security Administration,         )
                                 )
            Defendant.           )
_____)

     Plaintiff Robert Weiss filed a complaint on August 25, 2004,
seeking review of the Commissioner's decision denying his applications
for disability benefits.  The Commissioner answered the complaint on
February 16, 2005, and the parties filed a joint stipulation on
April 21, 2005.


                          **BACKGROUND**

                              **I**

     On April 9, 2002, plaintiff applied for disability benefits under
Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and
under the Supplemental Security Income ("SSI") program of Title XVI of

1  the Act, claiming an inability to work since November 23, 2000, or

2  April 28, 2001, due to ulcers and depression.  Certified

3  Administrative Record ("A.R.") 256-59, 456-61.[1]  The plaintiff's

4  applications were denied on July 10, 2001.  A.R. 248-51.  The

5  plaintiff then requested an administrative hearing, which was held

6  before Administrative Law Judge Robert Evans ("the ALJ") on

7  February 25, 2003.  A.R. 252, 463-88.  On May 16, 2003, the ALJ issued

8  a decision finding plaintiff is not disabled.  A.R. 213-21.  The

9  plaintiff appealed this decision to the Appeals Council, which denied

10 review on June 24, 2004, and denied plaintiff's request to reopen on

11 July 8, 2004.  A.R. 203-12.

12

13                                  II

14      The plaintiff, who was born on January 17, 1958, is currently 47

15 years old.  A.R. 256, 458, 466.  He is a high school graduate, and has

16 taken some computer classes.  A.R. 27, 100, 466.  He has previously

17 worked as a retail salesperson, a warehouse worker, an assembler, a

18 new car porter, and a machine operator.  A.R. 85-92, 95, 115, 117,

19 466-70.

20 //

21 //

22 //

23 _____

24      [1]  The plaintiff previously applied for Title II disability
   benefits on August 19, 1999, A.R. 78-80; however, his claim was
25 denied.  A.R. 66-75.  Following an administrative hearing, A.R.
   76-77, plaintiff's application for benefits was again denied.
26 A.R. 9-16, 24-63.  On March 8, 2002, the Appeals Council denied
   review, A.R. 4-8, and on April 24, 2002, plaintiff filed a
27 complaint, Weiss v. Barnhart, CV 02-3369-RC, which was dismissed
   pursuant to the parties' stipulation.
28

In addition to his physical complaints,[2] plaintiff has a history of anxiety and depression.  A.R. 379, 406-07.  On May 17, 2001, plaintiff was examined at the Harbor-UCLA Medical Center ("Harbor-UCLA"), where he was diagnosed with depression, among other conditions, and prescribed Paxil,[3] which was later switched to Prozac.[4]  A.R. 356, 449.  On October 10, 2001, plaintiff's depression was found to be "much" improved, A.R. 345, 348, 356, and on February 14, 2003, Daniel W. Schaefer, M.D., plaintiff's treating physician at Harbor-UCLA, opined plaintiff was "moderately" limited in his ability to deal with work-related stress.  A.R. 441-43.

On August 31, 2001, Dean DeCrisce, M.D., a psychiatrist at the Los Angeles County Department of Mental Health ("DMH"), examined plaintiff and diagnosed him with dysthymia[5] (likely secondary to his

---

[2]  Although plaintiff has both physical and mental complaints, plaintiff only challenges the ALJ's assessment of his mental impairment; therefore, the Court will not detail the medical records addressing plaintiff's physical complaints.

[3]  "Paxil is prescribed for a serious, continuing depression that interferes with [the] ability to function.  Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking."  The PDR Family Guide to Prescription Drugs, 492 (8th ed. 2000).

[4]  "Prozac is prescribed for the treatment of [major] depression — that is, a continuing depression that interferes with daily functioning."  The PDR Family Guide to Prescription Drugs at 554.

[5]  Dysthymia is "a mood disorder characterized by depressed feeling . . . and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted

general medical condition), among other things, and determined his

Global Assessment of Functioning ("GAF") to be 55.[6]  A.R. 159-63, 364-

66.  Thereafter, Dr. DeCrisce treated plaintiff by providing psycho-

therapy and prescription medications, including Effexor,[7] Elavil,[8]

Remeron[9] and Trazodone.[10]  A.R. 358-71, 410-39.  On January 25, 2003,

Dr. DeCrisce diagnosed plaintiff with recurrent "moderate" major

depressive disorder and dysthymia, A.R. 406-09, and opined plaintiff

had "moderate" restrictions of daily living activities, "marked"

difficulties in maintaining social functioning, "often" experienced

deficiencies of concentration, persistence or pace, and had

---

for more than two years but are not severe enough to meet the
criteria for major depression."  Dorland's Illustrated Medical
Dictionary, 519 (28th ed. 1994).

   [6]  A GAF of 55-60 indicates "[m]oderate symptoms (e.g., flat
affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-
workers)."  American Psychiatric Association, Diagnostic and
Statistical Manual of Mental Disorders, 34 (4th ed. (Text
Revision) 2000).

   [7]  "Effexor is prescribed for the treatment of depression —
that is, a continuing depression that interferes with daily
functioning.  The symptoms usually include changes in appetite,
sleep habits, and mind/body coordination, decreased sex drive,
increased fatigue, feelings of guilt or worthlessness, difficulty
concentrating, slowed thinking, and suicidal thoughts."  The PDR
Family Guide to Prescription Drugs at 237.

   [8]  Elavil, also called amitriptyline, "is prescribed for the
relief of symptoms of mental depression."  Id. at 34, 240.

   [9]  "Remeron is prescribed for the treatment of major
depression – that is, a continuous depressed mood that interferes
with daily life."  Id. at 569.

   [10]  Trazodone, also called Desyrel, "is prescribed for the
treatment of depression."  Id. at 198, 690.

1    "continual" episodes of deterioration or decompensation in work or

2    work-like settings.  A.R. 409.  Dr. DeCrisce further opined that

3    plaintiff's condition would cause him to miss more than three days of

4    work each month.  A.R. 408.

5

6         On June 17, 2002, Gennady Musher, M.D., a psychiatrist, examined

7    plaintiff and diagnosed him with a mild, recurrent major depressive

8    disorder and determined plaintiff's GAF to be 65.[11]  A.R. 379-82.  Dr.

9    Musher concluded that, from a psychiatric standpoint, the plaintiff is

10   able to function adequately, finding:

11

12           He would be able to maintain appropriate social functioning.

13           He would be able to take directions from supervisors and get

14           along with coworkers on a sustained basis.  He would not

15           have any difficulty in maintaining adequate concentration

16           and pace during an eight-hour workday.  His ability to adapt

17           to work-like situations is adequate.  He would have no

18           difficulty in dealing with changes in the work place.  He

19           would be able to carry out simple or complex instructions on

20           a sustained basis.

21

22   A.R. 381-82.

23

24        [11]  A GAF of 65 indicates "[s]ome mild symptoms (e.g.,

25   depressed mood and mild insomnia) or some difficulty in social,
     occupational, or school functioning (e.g., occasional truancy, or

26   theft within the household), but generally functioning pretty
     well, has some meaningful interpersonal relationships."  American

27   Psychiatric Association, Diagnostic and Statistical Manual of

28   Mental Disorders, 34 (4th ed. (Text Revision) 2000).

5

1   On June 28, 2002, K. Pasricha, a nontreating, nonexamining
2   psychiatrist, opined plaintiff has a mild major depressive disorder
3   that causes "mild" restrictions in the activities of daily living,
4   "mild" difficulties maintaining social functioning, and "mild"
5   difficulties in maintaining concentration, persistence or pace, and
6   there is "insufficient evidence" to determine whether plaintiff has
7   experienced any episodes of decompensation of an extended duration.
8   A.R. 392-405.

9

10                                **DISCUSSION**

11                                    **III**

12   The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
13   review the Commissioner's decision denying plaintiff disability
14   benefits to determine if her findings are supported by substantial
15   evidence and whether the Commissioner used the proper legal standards
16   in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th
17   Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "In
18   determining whether the Commissioner's findings are supported by
19   substantial evidence, [this Court] must review the administrative
20   record as a whole, weighing both the evidence that supports and the
21   evidence that detracts from the Commissioner's conclusion."  Reddick,
22   157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir.
23   2001).  "If the evidence can reasonably support either affirming or
24   reversing the [Commissioner's] conclusion, the court may not
25   substitute its judgment for that of the [Commissioner]."  Reddick, 157
26   F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir.
27   2002).
28   //

1    The claimant is "disabled" for the purpose of receiving benefits

2   under the Act if he is unable to engage in any substantial gainful

3   activity due to an impairment which has lasted, or is expected to

4   last, for a continuous period of at least twelve months.  42 U.S.C. §§

5   423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

6   "The claimant bears the burden of establishing a prima facie case of

7   disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995),

8   cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273,

9   1289 (9th Cir. 1996).

10

11   Regulations promulgated by the Commissioner establish a five-step

12   sequential evaluation process to be followed by the ALJ in a

13   disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

14   the ALJ must determine whether the claimant is currently engaged in

15   substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

16   If not, in the **Second Step**, the ALJ must determine whether the

17   claimant has a severe impairment or combination of impairments

18   significantly limiting him from performing basic work activities.  20

19   C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ

20   must determine whether the claimant has an impairment or combination

21   of impairments that meets or equals the requirements of the Listing of

22   Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20

23   C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the

24   ALJ must determine whether the claimant has sufficient residual

25   functional capacity despite the impairment or various limitations to

26   perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not,

27   in **Step Five**, the burden shifts to the Commissioner to show the

28   claimant can perform other work that exists in significant numbers in

7

1   the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

2

3       Where there is evidence of a mental impairment that may prevent a

4   claimant from working, the Commissioner has supplemented the five-step

5   sequential evaluation process with additional regulations addressing

6   mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d

7   913, 914 (9th Cir. 1998) (per curiam).  First, the Commissioner must

8   determine the presence or absence of certain medical findings relevant

9   to the ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

10  Second, when the claimant establishes these medical findings, the

11  degree of functional loss resulting from the impairment must be rated

12  by considering four areas of function: (a) activities of daily living;

13  (b) social functioning; (c) concentration, persistence, or pace; and

14  (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4),

15  416.920a(c)(2-4).  Third, after rating the degree of loss, the

16  Commissioner must determine whether the claimant has a severe mental

17  impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a

18  mental impairment is found to be severe, the Commissioner must

19  determine if it meets or equals a Listing.  20 C.F.R. §§

20  404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met,

21  the Commissioner must then perform a residual functional capacity

22  assessment, and the ALJ's decision "must incorporate the pertinent

23  findings and conclusions" regarding plaintiff's mental impairment,

24  including "a specific finding as to the degree of limitation in each

25  of the functional areas described in [§§ 404.1520a(c)(3),

26  416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3), (e)(2),

27  416.920a(d)(3), (e)(2).

28  //

1    Applying the five-step sequential evaluation process, the ALJ
2  found plaintiff has not engaged in substantial gainful activity since
3  April 28, 2001.  (Step One).  The ALJ then found plaintiff has "peptic
4  ulcer disease, controlled by medications, and a hiatal hernia which
5  more than minimally affect his ability to perform basic work
6  activities[, as well as] . . . a depressive disorder and alcohol
7  addiction, in remission, which are not severe, individually, or in
8  combination."  (Step Two).  However, plaintiff does not have an
9  impairment or combination of impairments that meets or equals a
10  Listing.  (Step Three).  The ALJ next determined plaintiff is able to
11  perform his past relevant work as a machine operator, as he performed
12  it; therefore, he is not disabled.  (Step Four).

13

14                              **IV**

15    The Step Two inquiry is "a de minimis screening device to dispose
16  of groundless claims."  Smolen, 80 F.3d at 1290; Edlund v. Massanari,
17  253 F.3d 1152, 1158 (9th Cir. 2001).  Including a severity requirement
18  at Step Two of the sequential evaluation process "increases the
19  efficiency and reliability of the evaluation process by identifying at
20  an early stage those claimants whose medical impairments are so slight
21  that it is unlikely they would be found to be disabled even if their
22  age, education, and experience were taken into account."  Bowen v.
23  Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119
24  (1987).  However, an overly stringent application of the severity
25  requirement violates the Act by denying benefits to claimants who do
26  meet the statutory definition of disabled.  Corrao v. Shalala, 20 F.3d
27  943, 949 (9th Cir. 1994).

28  //

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Edlund, 253 F.3d at 1159; see also 20 C.F.R. §§ 404.1521(a), 416.921(b) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, and the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, the ALJ found plaintiff does not have a severe mental impairment, individually or in combination with other impairments. However, plaintiff contends this finding is not supported by substantial evidence because the ALJ improperly assessed the opinion of Dr. DeCrisce, one of plaintiff's treating physicians. There is no merit to this contention.

"A '. . . mental impairment' is one that 'results from . . . psychological abnormalities *which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques*.'" Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citations omitted;

1    emphasis in original); 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); see
2    also 20 C.F.R. §§ 404.1508, 416.908 ("A . . . mental impairment must
3    be established by medical evidence consisting of signs, symptoms, and
4    laboratory findings, not only by [the claimant's] statement of
5    symptoms.").  Nevertheless,

6

7         [a] strict reading of the statutory requirement that an
8         impairment be 'demonstrable by medically acceptable clinical
9         and laboratory diagnostic techniques[]' . . . is
10        inappropriate in the context of mental illness.  Rather,
11        when mental illness is the basis of a disability claim,
12        clinical and laboratory data may consist of the diagnoses
13        and observations of professionals trained in the field of
14        psychopathology.  The report of a psychiatrist should not be
15        rejected simply because of the relative imprecision of the
16        psychiatric methodology or the absence of substantial
17        documentation, unless there are other reasons to question
18        the diagnostic technique.

19

20   Christensen v. Bowen, 633 F. Supp. 1214, 1220-21 (N.D. Cal. 1986)
21   (citation omitted); Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir.
22   1989).

23

24        Here, the ALJ rejected Dr. DeCrisce's assessment of plaintiff's
25   limitations, stating:

26

27        [Dr. DeCrisce's] statements are not supported by objective
28        findings.  If his conclusions are correct, then the

                                      11

1      [plaintiff] could not have appeared at the hearing and

2      testified as he did.  The doctor's gross exaggerations of

3      the [plaintiff's] mental state, including "marked" and

4      "continual" restrictions in almost all areas of mental

5      function, border upon advocacy because his conclusions are

6      based solely upon the [plaintiff's] alleged symptoms, which

7      the doctor did not even attempt to verify.  If he had seen

8      the medical record, especially the minimal evidence

9      supporting a serious mental impairment, he could not have

10      reasonably formulated such conclusions.

11

12  A.R. 219.

13

14     In so doing, the ALJ aptly noted inconsistencies between Dr.

15  DeCrisce's assessment and his treating notes, and between Dr.

16  DeCrisce's opinion and other medical evidence in the record.  For

17  instance, the ALJ noted that although Dr. DeCrisce "concluded that the

18  [plaintiff's] memory and concentration were so deficient and extreme

19  that he could not function in a stable work environment[,]" A.R. 219,

20  406-07, Dr. DeCrisce's own treatment notes repeatedly stated

21  plaintiff's cognition and concentration were intact and his memory

22  unimpaired.  A.R. 218, 365, 412, 417, 422, 438.  Moreover, on May 9,

23  2002, Dr. DeCrisce found there was no psychiatric justification for

24  plaintiff not working, A.R. 422, and in the months before Dr.

25  DeCrisce's assessment of plaintiff's mental limitations, Dr. DeCrisce

26  and plaintiff's therapist at DMH, repeatedly encouraged plaintiff to

27  return to work; but, he declined to do so, and instead discussed the

28  need for SSI benefits.  A.R. 411-13, 415, 422, 432.  Similarly, Dr.

12

1    DeCrisce's opinion that plaintiff had a "very poor response" to
2    medication is contradicted by Dr. Schaefer's opinion that plaintiff
3    was "much improved" with medication, A.R. 217, 345, 348, and Dr.
4    DeCrisce's own notes that plaintiff's medication was helpful.  See,
5    e.g., A.R. 412, 417.  As such, the ALJ provided specific and
6    legitimate reasons for rejecting Dr. DeCrisce's assessment of
7    plaintiff's limitations, and his findings are supported by substantial
8    evidence.  Reddick, 157 F.3d at 725; Connett v. Barnhart, 340 F.3d
9    871, 874 (9th Cir. 2003).

10

11       Finally, the opinions of examining psychiatrist Dr. Musher and
12   nontreating, nonexamining psychiatrist Dr. Pasricha provide further
13   evidence to support the ALJ's finding that plaintiff does not have a
14   severe mental impairment.  See Tonapetyan v. Halter, 242 F.3d 1144,
15   1149 (9th Cir. 2001) (examining physician's medical report based on
16   independent examination of claimant constitutes substantial evidence
17   to support ALJ's disability determination); Saelee v. Chater, 94 F.3d
18   520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating,
19   nonexamining physician can amount to substantial evidence, so long as
20   other evidence in the record supports those findings."), cert. denied,
21   519 U.S. 1113 (1997).
22   //
23   //
24   //
25   //
26   //
27   //
28   //

1      For the foregoing reasons, the ALJ's Step Two determination that

2  plaintiff does not have a severe mental impairment is supported by

3  substantial evidence.

4

5                                    **ORDER**

6      IT IS ORDERED that: (1) plaintiff's request for relief is denied

7  and defendant's request for relief is granted; and (2) the

8  Commissioner's decision is affirmed, and Judgment shall be entered in

9  favor of defendant.

10

11 DATE:   September 26, 2005            /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
12                                     UNITED STATES MAGISTRATE JUDGE

13 R&R-MDO\04-6925.MDO
   9/26/05

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28